## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA


| | | |
|---|---|---|
| 1.     **JUSTIN LEE JONES,** | ) | |
| | ) | |
|        **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 13-cv-00444-JHP** |
| | ) | |
| 1.     **AARON HACKER, in his individual and** | ) | |
| **official capacity,** | ) | |
| 2.     **JAMES ZEIGLER, in his individual and** | ) | |
| **official capacity,** | ) | |
| 3.     **JENNIFER ARNOLD, in her individual** | ) | |
| **and official capacity,** | ) | |
| 4.     **CITY OF BEGGS, a municipal** | ) | |
| **corporation,** | ) | |
| 5.     **EDDY RICE, in his individual and** | ) | |
| **official capacity,** | ) | |
| 6.     **LINDA BEAVER, in her individual and** | ) | |
| **official capacity,** | ) | |
| | ) | |
|        **Defendants.** | ) | |


## ORDER AND OPINION


COMES NOW for consideration the Motion for Summary Judgment filed on behalf of

Defendants the City of Beggs, Officer Aaron Hacker, and Officer James Zeigler, Jr.  (Dkt. #79).

Based on the record submitted by the parties, the Court finds that Defendants' Motion for

Summary Judgment should be granted.

## I.      BACKGROUND AND UNDISPUTED FACTS

In this case, Plaintiff Justin Lee Jones claims that he was wrongfully arrested on a felony

warrant after a deputy court clerk for Okmulgee County incorrectly issued a warrant for his

arrest.  As issued by the Okmulgee County court clerk, the warrant identified Plaintiff by his full

name ("Justin Lee Jones").  Plaintiff contends, however, that the warrant was wrongfully issued, since he had no connection to the underlying criminal matter at issue, and that the warrant should have listed "Justin Riley Jones" as the proper defendant.  The warrant was ultimately served on Plaintiff on January 19, 2013, by Officers Hacker and Zeigler of the Beggs Police Department, and he was taken under arrest, and released later that day.

Plaintiff now sues Defendants Jennifer Arnold (in her individual capacity) (deputy court clerk for Okmulgee County), and Linda Beaver (in her official and individual capacities) (Court Clerk for Okmulgee County) on various claims for violation of his constitutional rights concerning issuance of the warrant referenced above.  (Dkt. #2).  In addition, Plaintiff sues Defendants Officer Aaron Hacker, Officer James Zeigler, and the City of Beggs on various claims for violation of his constitutional rights concerning the arrest itself.   (Dkt. #2).  Defendants The City of Beggs, Officer Hacker and Officer Zeigler have filed a Motion for Summary Judgment.  (Dkt. #79).  Plaintiff has filed a Response Brief.  (Dkt. #102).  Defendants have filed a Reply Brief.  (Dkt. #109).  Based on the parties briefing, the Court finds that the following facts are uncontroverted:[1]

**Uncontroverted Facts.**  Officer Aaron Hacker was employed by the City of Beggs as a patrolman for all times relevant to these proceedings.  Officer James Zeigler, Jr., was a volunteer reserve patrolman with the City of Beggs for all times relevant to these proceedings.  Police officers for the City of Beggs are required to complete the State of Oklahoma's Council on Law Enforcement Education and Training ("CLEET") Academy as a condition of their employment

---

[1]Plaintiff's Response Brief contains a *narrative* section entitled "Statement of the Case and Additional Disputed Facts."  (Dkt. #102 at p. 3).  The manner in which Plaintiff has drafted this section is in direct conflict with the requirements of Local Rule 56.1(c), which generally provides that facts should be **numbered** and refer to the portions of the record upon which Plaintiff relies.

or association as a reserve officer. They must also attend state-mandated CLEET training for continued certification. Officer Hacker was CLEET-certified and maintained his CLEET certification throughout the entirety of his employment with the City of Beggs. Officers Hacker and Zeigler attended CLEET-sponsored academies which included training on warrants. Officer Zeigler was CLEET-certified and maintained his CLEET certification through the entirety of his association with the City of Beggs. Officers Hacker and Zeigler also received on-the-job "in house" training regarding their duties as police officers with the City of Beggs, including warrant arrests. In addition, the Beggs Police Department has issued the Beggs Police Department Policies and Procedures Manual, which is available to officers. Full-time and reserve police officers for the City of Beggs are authorized to execute arrest warrants under the authority of the state. Defendants have conceded, and Plaintiff does not dispute, that Officers Hacker and Zeigler were acting in the course and scope of their duties as officers of the City of Beggs for all purposes associated with this lawsuit.

In January of 2013, Officer Aaron Hacker was conducting research on the "On Demand Court Records" service (a computerized docketing system maintained by KellPro, Inc.), and came across a notification of an outstanding warrant for Justin Lee Jones regarding a certain criminal case (with case number CF-1995-00052). Officer Hacker cross-researched the Offender Data Information System ("ODIS") (maintained by the Oklahoma State Bureau of Investigation) for additional information regarding Justin Lee Jones. Unbeknownst to Officer Hacker, Plaintiff Justin Lee Jones' identifying information had been inadvertently substituted for that of the actual

defendant in CF-1995-00052, i.e., "Justin Riley Jones," by the District Court Clerk for Okmulgee County.[2]

In light of the warrant, Officer Hacker and Officer Zeigler made contact with the Plaintiff at his home on 507 Isperhecher, Beggs, Oklahoma, on the morning of January 19, 2013. Officer Hacker identified himself and advised Plaintiff that there was a warrant for the Plaintiff's arrest, after the Plaintiff identified himself as Justin Jones. Officer Hacker then obtained the Plaintiff's drivers' license and radioed to Beggs Dispatch to confirm the warrant's identifiers and validity. Beggs Dispatch contacted Okmulgee County Dispatch to confirm the validity of the warrant. Okmulgee County Dispatch confirmed the warrant and actually faxed a "Warrant Hold" to the Beggs Police Department.

Plaintiff states that, at that time, he informed Officers Hacker and Zeigler that he was not the individual listed on the warrant and that the misidentification had occurred before. He requested that he be permitted to call his wife so she could return home and locate a document to substantiate the misidentification. Officer Hacker agreed to allow the Plaintiff to call his wife who returned to the residence to search. Plaintiff's wife produced a Notice of Bench Warrant letter from the Okmulgee County Court Clerk's office dated 2009. Officer Hacker also called Beggs Dispatch to request *additional* identifiers including a request for a photograph of the individual named in the warrant. Beggs Dispatch *again* contacted Okmulgee County dispatch to verify the warrant again and request a picture. Okmulgee County dispatch then provided the *Plaintiff's* driver's license number and indicated they did not have access to a picture or the

_____

[2]According to Plaintiff, the 2012 warrant contained Plaintiff's full name and driver's license number, but his date of birth had been replaced with the criminal defendant's date of birth; his mailing address was not on the warrant. A previous version of the warrant (issued in 2009) contained Plaintiff's full name, date of birth, driver's license number and mailing address. The underlying felony charge in CJ-1995-52 was for possession of methamphetamine.

actual warrant. The driver's license number provided by Okmulgee County was Plaintiff's driver's license number.

Based on the information available to him at that time, Officer Hacker arrested the Plaintiff on the warrant. Officer Hacker and Officer Zeigler transported the Plaintiff to the Okmulgee County Jail. On the way to the jail, Officer Hacker stopped by the Beggs Police Department to pick up the Warrant Hold that had been faxed over. Plaintiff was booked into the Okmulgee County Jail on January 19, 2014 at 11:42 am. He was released from jail the same day at 12:47 p.m. It is uncontroverted that an Okmulgee County District Court judge signed the warrants produced by the Okmulgee County Court Clerk's office directing the arrest of Justin Lee Jones.

## II.  DISCUSSION

### A.  SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if the pleadings, affidavits, depositions, and evidence on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it is essential to the proper disposition of a claim under controlling law and an issue is genuine if the evidence is such that a rational trier of fact could resolve the issue either way. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Id.* at 255. The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Id.* at 322. If the movant carries its burden, the non-

movant must then "set forth specific [admissible] facts," outside of the pleadings, that show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 248. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted).

**B.  DEFENDANT THE CITY OF BEGGS IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR NEGLIGENT HIRING, TRAINING AND RETENTION**

In this case, Plaintiff alleges that the City of Beggs is liable under 42 U.S.C. §1983 because of a "well-established custom" of allowing officers to conduct "online research for outstanding warrants without receiving any training for such act, and with no knowledge of how the website operates or if the information contained on the website is accurate." (Dkt. #102 at p. 21). Plaintiff claims that this alleged "custom" caused a violation of Plaintiff's constitutional rights because he was arrested as a result of a warrant that inadvertently included his name ("Justin Lee James"), instead of the name of the true criminal defendant ("Justin Riley Jones").

To state a claim under § 1983, Plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) "that the alleged violation was committed by a person acting under color of state law." *See West v. Atkins*, 487 U .S. 42, 48 (1988) (citations omitted). Here, Plaintiff must allege his constitutional rights were violated and that the violation was committed by the City of Beggs. A local governmental unit may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability. *See Board of County Commissioners v. Brown*, 520 U.S. 397, 403 (1997); *Collins v. City of Harker Heights*, 503 U.S. 115, 121 (1992); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, the plaintiff, must

establish" that the constitutional deprivation occurred pursuant to official policy or custom." *See Goss v. Bd. of Cnty. Comm'rs of Creek Cnty.*, 2014 WL 4983856 (N.D. Okla. Oct. 6, 2014) (citing *Monell* 436 U.S. at 694). "[T]o establish municipal liability, a plaintiff must show: 1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged." *See Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006). It is not enough for a plaintiff to allege that the actions of a governmental employee injured him. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002). "Instead, it must be shown that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." *Seamons v. Snow*, 206 F.2d 1021, 1029 (10th Cir. 2000).

With respect to a "failure to train" case pursued under 42 U.S.C. §1983, the standards of proof are understandably stringent:

> If the plaintiff asserts the alleged custom or policy comprised a failure to act, he or she must demonstrate the municipality's inaction resulted from "deliberate indifference to the rights" of the plaintiff. More specifically, if the inaction theory rests on an alleged failure to train, the plaintiff must prove "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need" for additional training. Ordinarily, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose [municipal] liability." In the case where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued.

*Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by an

municipality – a 'policy' as defined by our prior cases – can a city be liable for such a failure under § 1983").

### 1. Plaintiff Has Failed To Establish a Violation of His Fourth Amendment Rights

In the present case, Plaintiff's §1983 claim against the City of Beggs fails for several reasons. First, Plaintiff cannot show that his constitutional rights were violated by his arrest. In the context of a false arrest claim, an arrestee's constitutional rights are violated if the arresting officer acted in the absence of probable cause that the person had committed a crime. *See Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012). The arrest of a person who is mistakenly thought to be someone else is valid if the arresting officer (1) had probable cause to arrest the person sought, and (2) reasonably believed the person arrested was the person sought. *See Hill v. California*, 401 U.S. 797, 802 (1971) ("[W]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest."). "The very phrase 'probable cause' confirms that the Fourth Amendment does not demand all possible precision." *Herring v. United States*, 555 U.S. 135, 139 (2009). Police officers are entitled "to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause that official belief in the existence of probable cause is unreasonable." *See Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989).

In *Baker v. McCollan*, 443 U.S. 137 (1979), the U.S. Supreme Court addressed a §1983 claim involving a mistaken identity situation. In that case, the plaintiff's brother had appropriated his identification. When the brother was arrested on narcotics charges, he presented the plaintiff's driver's license with the brother's picture in it. An arrest warrant was thereafter

issued in the plaintiff's name and he was arrested after a traffic stop. Despite the mistaken identity, the Supreme Court held that the plaintiff's arrest was constitutionally sufficient because it was made pursuant to a facially valid warrant, which satisfied the Fourth Amendment. *Id.* at 143-44. In addition, the Court refused to find a constitutional violation in the sheriff's failure to investigate the respondent's claim of mistaken identification. "Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." *Id.* at 145. The Court noted that this insulation from liability was not unlimited: "Obviously, one in respondent's position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment." *Id.* at 144. However, noting that the Constitution "does not guarantee that only the guilty will be arrested," the Court refused to find the plaintiff's eight-day detention to be a violation of constitutional dimensions, as it is the role of the judiciary to provide due process in this regard. *Id.*

Similarly, in *Reyes v. Bd. of County Comm'rs of the County of Arapahoe*, 2008 WL 961565 (D. Colo. Apr. 8, 2008) *aff'd*, *Reyes v. Bd. of County Comm'rs*, 311 Fed. Appx. 113 (10th Cir. 2009), the Tenth Circuit affirmed the dismissal of a plaintiff's § 1983 claim for a Fourth Amendment violation wherein his arrest was made pursuant to a warrant identifying an individual with multiple matching identifiers as the plaintiff (including name and identification card number), but with differing middle names. The district court opined that it was reasonable for the officers to conclude that the plaintiff was the person named in the warrant based on the numerous matching identifiers (despite the plaintiff's protestations of a "mistake"), *id.* at 3, and

9

that the officers did not have an affirmative duty to investigate whether the plaintiff was actually the individual sought by the warrant (especially in light of the plaintiff's failure to assert his claim of mistaken identity). *Id.* at 5. The Tenth Circuit summarily affirmed, noting that the plaintiff's claims were "clearly foreclosed" by *Baker*, *supra. See Reyes*, 311 Fed. Appx. at 113; *see also Smyth v. City of Lakewood*, 1996 WL 194715, 83 F.3d 433 (10th Cir. 1996) (unpublished) (officer entitled to rely on accurate computer notification of existing arrest warrant and not required by Fourth Amendment to obtain copy of warrant, research supporting documentation, or go behind facial validity of warrant before making arrest).

In this case, the undisputed facts show that Officers Hacker and Zeigler acted reasonably in executing on the outstanding warrant. Officer Hacker located the outstanding warrant on the ODCR computerized court docketing information maintained by KellPro, Inc. It is undisputed that the warrant had been issued by the District Court Clerk for Okmulgee County; was signed by a judge from the Okmulgee County District Court; and was issued for "Justin Lee Jones" regarding a certain criminal proceeding numbered CF-1995-00052 in that County. Officer Hacker cross-referenced the ODIS system for additional information concerning Justin Lee Jones. However, unbeknownst to Officer Hacker, Plaintiff Justin Lee Jones' identifying information had been inadvertently substituted for that of the actual defendant in CF-1995-0052 ("Justin Riley Jones"). It is also undisputed that the District Court Clerk for Okmulgee County inadvertently made this substitution, and that neither Officer Hacker nor Officer Zeigler had any notice of the substitution, or any role in the substitution.

When Officers Zeigler and Hacker made contact with Plaintiff to effect his arrest based upon the outstanding warrant, Plaintiff did make an objection regarding the mistaken identity. Officers Hacker and Zeigler did not ignore the protest, but made contemporaneous inquiry to

check the identifiers listed in the warrant with the Plaintiff's identifiers; they also requested additional information from the agency that issued the warrant.[3]  Officers Hacker and Zeigler obtained Plaintiff's driver's license and radioed Beggs Dispatch to confirm the warrant's identifies and validity.   Beggs Dispatch, in turn, contacted Okmulgee County Dispatch to confirm the validity of the warrant.   Okmulgee County Dispatch confirmed the warrant and actually faxed a "Warrant Hold" to the Beggs Police Department.   The Okmulgee County Dispatch later provided *Plaintiff's* driver's license number in confirming the warrant.   Finally, it is uncontroverted that Plaintiff was not unduly delayed because of the arrest, insofar as he was booked into the Okmulgee County Jail on January 19, 2014 at 11:42 a.m., and released 65 minutes later (at 12:47 p.m).[4]   Based on the information provided to the Officers, the Officers had probable cause to arrest the person sought, and reasonably believed the person arrested (Plaintiff) was the person sought.   For those reasons, the Officers acted reasonably in effecting Plaintiffs' arrest, despite the fact that the warrant incorrectly identified Plaintiff.

Further, in light of *Baker*, *supra*, the contemporaneous inquiry made by Officers Hacker and Zeigler met or went beyond any duty to investigate the Plaintiff's claims of mistaken identity.   While Plaintiff protests that the warrant did not contain sufficient information regarding the person to be seized, any failure to provide more identifying information in the warrant was not attributable to the City of Beggs, or to Officers Hacker or Zeigler.   The City of Beggs did not issue the warrant, and the Officers simply had no reason to know that the warrant incorrectly listed the wrong "Justin Jones."   In fact, during the course of the arrest, Plaintiff produced a

---

[3]Plaintiff does not dispute that Officer Hacker made multiple calls to Beggs dispatch to confirm the information included in the warrant.   (See Dkt. #102 at 15) ("Defendant Hacker made multiple calls to Beggs dispatch.").

[4]In *Baker*, the detention lasted eight (8) days, and yet the Court found no constitutional violation.  *See Baker*, 443 U.S. at 141.

Notice of Bench Warrant letter which further led Defendants to believe that Plaintiff was the correct person to be arrested.

Plaintiff has suggested that, based on the case number of the underlying felony of the warrant (CF-1995-00052) and the date of birth of the Plaintiff (1981), the officers should have exercised their independent judgment; performed an age calculation; and determined that the Plaintiff would not have been eligible to be charged as an adult for a drug felony. However, the law does not impose this type of obligation on officers when they make an arrest pursuant to a facially valid warrant. That is, an officer is not required to independently investigate a claim of innocence insofar as the officer is executing upon a warrant signed by a judge and issued pursuant to criminal charges pursued by the District Attorney. "This distinction is critical, as *Baker* [*v. McCollan*, 443 U.S. 137 (1979)] accepted that a 'reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers" is "entirely consistent with due process of law.' Focusing on this language, the court in *Brady* [*v. Dill*, 187 F.3d 104 (1st Cir.1999)] emphasized that 'respect for the separation of functions . . . largely explains why the *Baker* Court declined to impose on police officers an affirmative duty of investigating claims of innocence.'" *Echols v. Unified Gov't of Wyandotte Cnty., Kansas City, Kan.*, 399 F.Supp.2d 1201, 1208 (D. Kan. 2005); *see also Romero v. Fay*, 45 F.3d 1472, 481 (1995) (recognizing the *Baker* Court's conclusion that judicial system was appropriate forum to determine innocence of arrestee, and that police officers had no duty to investigate plaintiff's claims of innocence when probable cause otherwise existed for arrest); *Reyes v. Bd. of County Comm'rs of the County of Arapahoe*, 2008 WL 961565 (D. Colo. Apr. 8, 2008) (unpublished), *aff'd*, 311 Fed. Appx. 113 (10th Cir. 2009) (unpublished) (affirming dismissal of § 1983 claim where arrest was made pursuant to a warrant identifying an individual with multiple matching

12

identifiers as the plaintiff including name and identification number, but with differing middle names).

In this case, Plaintiff cannot establish a Fourth Amendment violation because Officers Hacker and Zeigler had probable cause to arrest the person sought, and reasonably believed the person arrested (Plaintiff) was the person sought.[5]  Because Plaintiff cannot establish a violation of his Fourth Amendment rights, Defendant City of Beggs is entitled to summary judgment on Plaintiff's §1983 claim.

> **2.    Plaintiff has Failed to Identify A Custom, Practice or Policy on the Part of the City of Beggs which Caused the Deprivation of his Constitutional Rights**

Even assuming Plaintiff had established a violation of his federal constitutional or statutorily created rights, he has still failed to establish any policy or custom promulgated by the City of Beggs that proximately caused the deprivation of rights.  In this case, Plaintiff has sued the City of Beggs, as the employer of Officers Hacker and Zeigler.  In his Complaint, Plaintiff broadly alleged (in his Third Cause of Action) that the City of Beggs was negligent in its "hiring, training and retention" of its police officers regarding arresting individuals "without a valid

---

[5] The Court rejects Plaintiff's reliance on *Berg v. County of Allegheny*, 219 F.3d 261, 267, 68 (3rd Cir. 2000) and *Whiteley v. Warden*, 401 U.S. 560 (1971).  In *Berg*, the plaintiff produced certain "release documents" to the constable at the time of his arrest, but the constable refused to examine the paper work.  Based on those facts, and others, the Third Circuit remanded the matter to the district court for further fact-finding regarding the constable's reliance on the warrant, including issues concerning the constable's possible pre-disposition to arrest because he earned a fee for each such arrest.  *Id.* at 273-74.  No such facts are presented in the present case, and *Berg* is therefore distinguishable.  In *Whiteley*, the Court addressed a habeas corpus proceeding and whether certain incriminating evidence should have been excluded from a criminal trial; the case did not address a §1983 claim or qualified immunity issues.  Further, that case implicated what the Court described as a warrantless arrest predicated upon a radio bulletin and an unsubstantiated informant tip.  The present case does not implicate these issues.

warrant or probable cause," and that this negligence violated his constitutional rights. (Dkt. #2 at 12). However, in Plaintiff's Response to the Motion for Summary Judgment, he has failed to present any evidence or argument concerning his negligent hiring and retention claims, (Dkt. #21 at p. 20), and the Court therefore deems those claims abandoned.[6] Rather, Plaintiff asserts that the City of Beggs had a "well-established custom" of allowing officers to conduct "online research for outstanding warrants without receiving any training for such act, and with no knowledge of how the website operates or if the information contained on the website is accurate." (Dkt. #1 at p. 21).

Failure to train, in "limited circumstances," can be considered a municipal policy under *Monell*, and as such can serve as the basis for § 1983 liability. *See Canton,* 489 U.S. at 387-88. Demonstrating a failure to train requires a party to show that the deficiency in training was the cause of the constitutional injury and that the municipality was deliberately indifferent to the need for training. *Id*. at 388, 391. Deliberate indifference is found when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *Harris*, 489 U.S. at 390. But an officer's unsatisfactory training will not alone find liability of a municipality as the officer's shortcomings may be a result of factors other than a lacking training program. *Id*. at 389. "[S]howing merely that additional training would have been helpful in making difficult decisions does not establish

---

[6]By failing to present arguments and authorities in support of these claims, Plaintiff has abandoned them. *See Jones v. Rent–A–Center*, 240 F.Supp.2d 1167, 1174–75 (D. Kan. 2002) (plaintiff who responds to summary judgment motion but "offers no legal argument or authority in support [has] abandoned her claims"); *cf. U.S. v. Heijnen*, 215 Fed.Appx. 725 (10th Cir. 2007) (defendant's failure to cite to relevant legal authority or argument warranted dismissal of appeal).

municipal liability. "[P]rov[ing] that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct" will not suffice. *Connick v. Thompson,* 131 S. Ct. 1350, 1363-64 (2011) (internal citations omitted).

Plaintiff has failed to identify a genuine issue of material fact regarding his §1983 failure-to-train theory of liability as against the City of Beggs. In this case, it is undisputed that both officers were (and are) CLEET-certified pursuant to the requirements of 70 O.S. § 3311, which establishes the following with respect to each officer: 1) there was no record of a felony conviction, crime of moral turpitude, or crime of domestic violence; 2) they had undergone a psychological evaluation; 3) they had received a high school diploma or GED equivalency; 4) they had not participated in a deferred sentence for a felony, crime involving moral turpitude, or crime of domestic violence; 5) they had attained twenty-one (21) years of age prior to certification as a peace officer; 6) they had submitted proof of U.S. citizenship or resident alien status; 7) they had submitted their name, gender, date of birth, and address to the Department of Mental Health for search of records for involuntary commitment; and 8) they had satisfactorily completed a basic police course approved by the Council. Since both officers were CLEET-certified in accordance with satisfaction of the aforementioned elements, an in depth assessment of their backgrounds did occur. Both officers attended CLEET-certified Basic Academies, either for reserve or full time officers. Officer Hacker, as a full time officer, had received over 500 hours of CLEET-certified training at the time of Plaintiff's arrest Officer Zeigler, as a reserve officer, had received over 200 hours of CLEET-certified training at the time of the Plaintiff's arrest. Both officers received on the job training through their employment with the City of Beggs including warrant service.

Insofar as each officer was CLEET-certified, the City of Beggs was on notice that these officers met the stringent requirements of certification.[7] Plaintiff has failed to present any evidence to show that a review of either Officer Hacker's or Officer Zeigler's background or record would have been cause for any kind of concern regarding their training to be police officers for the City of Beggs. Further, in order to establish causation as a part of a failure to train liability theory, Plaintiff must show a deficiency in the training program that is "closely related to the ultimate injury" and then show that deficiency caused his injury. *See Canton*, 489 U.S. at 391. Because Plaintiff has failed to demonstrate that the training Officers Hacker and Zeigler received was insufficient, Plaintiff cannot demonstrate that any failure in the training resulted in the deprivation of Plaintiff's constitutional rights. *See Rollins v. Town of Haskell*, 2009 WL 3614784 (E.D. Okla. 2009) (officer who received field training, had access to departmental policies, and was certified in accordance with 70 O.S. § 3311 was sufficiently trained to preclude tort liability against employing municipality for a negligent training claim).

In addition, the Court rejects Plaintiff's arguments concerning the use of the "ODCR" (www.odcr.com) website by police officers for the City of Beggs. Plaintiff has failed to establish (1) that the police officer's reliance on the ODCR website was "obviously improper" and substantially likely to result in the violation of constitutional rights, or (2) that the City of Beggs was aware of such deficiencies. In fact, the most that Plaintiff has shown is that the ODCR website contained inaccurate information concerning the person to be arrested in CF-1995-52. Plaintiff has presented no evidence establishing that the www.odcr.com website itself was

---

[7]CLEET-certification supports summary judgment with respect to any argument that the City had a policy or custom of failing to train or supervise its officers. *See, e.g., Rollins v. Town of Haskell, Okla.,* 2009 WL 3614784, at *10 (E.D. Okla. 2009).

unreliable for the purpose of identifying outstanding bench warrants, but instead argues that Defendant Arnold *failed to correct* information contained in the ODCR system regarding *this* arrest. For these reasons, Plaintiff has failed to establish that the Officers' reliance on (or training with respect to) the www.odcr.com website reflected deliberate indifference to the rights of citizens.[8]

Plaintiff has not met his burden to establish that the officers' training was insufficient, that the City of Beggs knew the training was insufficient, nor that it would be obvious to the City of Beggs that an officer with similar training to Officer Hacker or Officer Zeigler would have insufficient instruction concerning use of the ODCR website service, or regarding service of warrants issued by Court Clerks of Oklahoma Courts. Further, Plaintiff has failed to identify any facts establishing that any failure-to-train (regarding the ODCR website or otherwise) was causally related to Plaintiffs' arrest in this case.[9] Based on the uncontroverted facts, the Court

---

[8]Indeed, Plaintiffs' allegations regarding use of the ODCR website sound in negligence; this is not sufficient to satisfy the deliberate indifference standard. *See Bryan Cnty.*, 520 U.S. at 407. With respect to Officers Hacker and Zeigler, Plaintiff complains solely about his own arrest pursuant to the warrant at issue here; he has failed to present any evidence establishing that any other persons were improperly arrested pursuant to his "failure to train" theory. Plaintiff's reference to "ten to twenty" other arrests using the ODCR "flag" system is inapposite, as Plaintiff has failed to show that these arrests were improper or unconstitutional. Hence, the state of the record precludes a finding that the "need for more or different training" regarding the ODCR system "[was] so obvious, and the inadequacy, so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.

[9] The Court also notes that the ODCR website was not the only source used by the Officers concerning the warrant. Officer Hacker also cross-referenced the ODIS website and, at the time of the arrest, the Officers confirmed the validity of the warrant through dispatch.

finds that Defendant City of Beggs is entitled to summary judgment on Plaintiff's §1983 claim for failure-to-train.[10]

### C. DEFENDANTS HACKER AND ZEIGLER ARE ENTITLED TO QUALIFIED IMMUNITY WITH RESPECT TO PLAINTIFF'S §1983 CLAIMS

Plaintiff has also pursued a §1983 claim against Defendants Officers Hacker and Zeigler in their individual capacities. (Dkt. #2 at 10). Plaintiff argues that Officers Hacker and Zeigler violated Plaintiff's Fourth/Fourteenth Amendment Rights when they arrested him pursuant to the warrant referenced above, claiming that said Officers conducted an "unreasonable and insufficient investigation to determine whether there was a valid warrant for the arrest of Plaintiff." (Dkt. #2 at 10, ¶50). For the reasons stated herein, the Court finds that Officers Hacker and Zeigler are entitled to qualified immunity.

Government employees, like Hacker and Zeigler, are generally immune from suit in their individual capacity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). To be held liable in an individual capacity under § 1983, the defendant must have directly participated, or had personal involvement, in the alleged wrong. *See Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011). If personal involvement can be demonstrated, Plaintiff must also demonstrate that the individual-capacity defendant is not entitled to qualified immunity. Courts have long recognized that government officials performing discretionary functions are entitled to qualified immunity from suit. *See e.g. Anderson v. Crieghton*, 483 U.S. 635, 638 (1987). Qualified immunity protects

---

[10]For the same reasons, the Court finds that Defendants Hacker and Zeigler are entitled to summary judgment on any claims pursued against them in their "official capacity," which is tantamount to a claim against the municipality. *See Monell*, 436 U.S. at 694. Further, it is uncontroverted that Officers Hacker and Zeigler were not "final policymakers" sufficient to impose liability on the municipality for their actions or decisions. *Cf. Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

"all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Government officials and employees sued in their individual capacities are immune from civil damages liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson*, 483 U.S. at 638. "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223 (2009) (*quoting Groh v. Ramirez*, 540 U.S. 551, 567 (2004)).

"When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (citing *Pearson*, 555 U.S. at 232); *Martinez v. Carr*¸ 479 F.3d 1292, 1295 (10th Cir. 2007) (noting that "the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity"). Further, the standard for an official's action is "objective legal reasonableness" under the doctrine of qualified immunity. *Anderson v. Crieghton*, at 639 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)).

Defendants Zeigler and Hacker are entitled to summary judgment because Plaintiff has failed to identify any genuine dispute of material fact concerning the violation of his constitutional rights. The undisputed facts show that Officers Hacker and Zeigler acted reasonably in executing on the outstanding warrant, insofar as Officers Hacker and Zeigler had probable cause to arrest the person sought, and reasonably believed the person arrested (Plaintiff) was the person sought. For that reason, they are entitled to qualified immunity on Plaintiff's §1983 claim for wrongful arrest under the Fourth/Fourteenth Amendment.

Further, the Court finds that Defendants Zeigler and Hacker are entitled to qualified immunity because the law at issue was not clearly established at the time of Plaintiff's arrest. "[An officer's] conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). To determine whether a right was clearly established at the time of the officer's challenged conduct, the Court must review cases from the Supreme Court, the Tenth Circuit, and cases from other circuits to determine if there is a consensus review. *Ochser v. Funk,* 266 P.3d 1061, 1070 (Ariz. 2011) (*discussing Saucier v. Katz*, 533 U.S. 194, 201 (2001)). A case directly on point is not required, but existing precedent must place the constitutional question beyond debate. *Ashcroft*, 131 S. Ct. at 2083. A divergence in views from lower courts on a particular issue justifies a finding that the law was not clearly established on a particular topic. *Pearson v. Callahan*, 555 U.S. at 245 ("[W]here the divergence of views on the consent-once-removed doctrine was created by the decision of the Court of Appeals in this case, it is improper to subject petitioners to money damages for their conduct.").

The Supreme Court has held that, if police have probable cause to arrest a person, and reasonably mistake someone else for that person, then the arrest of the other person is a valid arrest. *See Hill*, 501 U.S. at 802. Likewise, the U.S. Supreme Court has clearly indicated that an arresting officer does not have an affirmative duty to investigate every claim of innocence, nor is an officer charged by the Constitution with performing "an error-free investigation" of such claims. *See Baker*, 443 U.S. at 145. The *Baker* Court implied that, in cases of "repeated" claims of innocence, an arresting officer may have an obligation to make inquiry. *Id.* While it is undisputed that the Officers in this case satisfied any "duty to investigate" Plaintiffs' claims of

mistaken identity, the case law in these types of cases has resulted in a variety of outcomes, depending on the degree of similarity between the suspect and the descriptors associated with that suspect.[11]   Based on these varying outcomes, the Court concludes that, even assuming Plaintiff could establish a constitutional violation, the "contours" of the right are not sufficiently clear such that "every reasonable official would have understood that what he is doing violates that right."   *See Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011).   For this reason also, Defendants Hacker and Zeigler are entitled to qualified immunity with respect to Plaintiff's §1983 claim.

### D.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW TORT CLAIMS

In his Complaint, Plaintiff stated the following state law tort claims against Defendants Zeigler and Hacker:  (1) negligent/intentional infliction of emotional distress; (2) false arrest; and

---

[11]*See, e.g., Ochser v. Funk,* 266 P.3d 1061 (Ariz. 2011) (recognizing qualified immunity in mistaken-identity arrest situation, in light of "conflicting case law" at time of arrest); *Gonzalez v. Lopez*, 2008 WL 323150, at *9 (N.D. Tex. Jan. 23, 2008) *report and recommendation adopted in part*, 2008 WL 323147 (N.D. Tex. Feb. 6, 2008) (finding arrest not unconstitutional when made in reliance on several information sources and no evidence of awareness of two potential suspects); *Mechler v. Hodges*, 2005 WL 1406102, at *11 (S.D. Ohio June 15, 2005) (finding arrestee's protestations, misspelling of name on warrant, arresting officer's personal knowledge of information not presented to magistrate pertinent to probable cause determination, were not objectively reasonable to effect arrest); *Robinson v. City & Cnty. of Denver, Colorado*, 2014 WL 1395758, at *5 (D. Colo. Apr. 10, 2014) *motion to certify appeal denied sub nom. Robinson v. City & Cnty. of Denver*, 2014 WL 2499178 (D. Colo. May 29, 2014) (finding identifying information of name, birth date, social security number, height, and weight matching arrestee sufficient for arrest); *Hill v. California*, 401 U.S. 797 (1971) (finding matching physical description and presence at address on warrant sufficient for arrest despite proof of identification); *Jama v. City and Cnty. of Denver*, 2010 WL 3615027 (D. Colo. 2010) (finding birth date, social security number, and name matching alias of person named in warrant and similar physical descriptors sufficient to arrest despite no matching scars, and protestations of mistaken identity); *Reyes v. Bd. of County Comm'rs of the County of Arapahoe*, 2008 WL 961565 (D. Colo. Apr. 8, 2008) (unpublished), *aff'd, Reyes v. Bd. of County Comm'rs*, 311 Fed. App'x 113 (10th Cir. 2009) (unpublished) (rejecting unlawful arrest claim with respect to warrant with same name, physical description including scar, and identification number, but differing middle name).

(3) assault and battery. (Dkt #2 at 13-15). The Complaint is not clear on whether Plaintiff intended to pursue these tort claims against Defendants Zeigler and Hacker in their individual capacities. The Complaint does generally allege, however, that Defendants Hacker and Zeigler were acting in their capacity as police officers for the City of Beggs, and yet that Plaintiff seeks to hold them liable in their "individual and official" capacities. (Dkt #2 at 4, ¶¶2-8).

On the summary judgment record, Plaintiff has presented no evidence supporting the argument that Defendants Zeigler and Hacker were acting outside the scope of their employment at the time of the arrest of Plaintiff. For that reason, Defendants Zeigler and Hacker are entitled to summary judgment on any state law tort claims pursued against them in their individual capacities. 51 O.S. §163 ("Suits instituted pursuant to the provisions of this act shall name as defendant the state or the political subdivision against which liability is sought to be established. In no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as defendant . . ."); *Carswell v. Okla. State Univ.*, 995 P.2d 1118, 1123 (Okla. 1999) ("Employees, other than resident physicians and interns, acting within the scope of employment may not be named as defendants in an action based on the Tort Claims Act.").[12]

To the extent Plaintiff has pursued claims for "false arrest" and "assault and battery" against the City of Beggs, the Court finds that the City of Beggs is entitled to summary judgment. To succeed on a claim of false arrest, the plaintiff must demonstrate lack of probable

---

[12]Further, Plaintiff has presented no evidence or argument whatsoever concerning his claim for "negligent or intentional infliction of emotional distress," and the Court therefore deems this claim abandoned. *See Jones v. Rent–A–Center*, 240 F.Supp.2d 1167, 1174–75 (D. Kan. 2002). It is unclear whether Plaintiff intended to pursue a state-law based negligence claim, but even assuming he did, the Court finds this claim has been abandoned as well, *id.*, as it was not separately addressed in his response to the motion for summary judgment. (Dkt. #102).

cause to arrest.  *See Fumi v. Board of County Com'rs of Rogers County*, 2011 WL 4608296 (N.D. Okla. 2011) (citing *Roberts v. Goodner's Wholesale Foods, Inc.*, 50 P.3d 1149, 1151 n.3 (Okla. Civ. App. 2002)). In this case, the Court has concluded above that Officers Hacker and Zeigler had probable cause to make the arrest at issue, despite the fact that incorrect information had been substituted in the warrant itself.  *See Hill,* 401 U.S. at 802 ("[W]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest.").  For that reason, the false arrest claim fails as a matter of law.

With respect to Plaintiff's assault and battery claim, the Court notes that, in Oklahoma, "an action for assault and battery will not lie for the force when . . . necessarily committed by a public officer in the performance of any legal duty."  *Fitzgerald v. Board of County Com'rs for the County of Pottawatomie County*, 2010 WL 1410979 (W.D. Okla. April 2, 2010) (internal citations omitted); *Burns v. Holcombe*, 2010 WL 2756954, at *13 (E.D. Okla. July 12, 2010); *Thetford v. Hoehner*, 2006 WL 964754, at *6 (N.D. Okla. April 12, 2006); 21 O.S. § 643 ("To use or to attempt to offer to use force or violence upon or toward the person of another is not unlawful in the following cases:
. . . When necessarily committed by a public officer in the performance of any legal duty . . .").  In this case, Plaintiff makes no argument and presents no evidence regarding the amount of forced used, but relies solely on his claim that the Officers lacked probable cause to arrest him. Because the Court has already determined that Officers Hacker and Zeigler acted lawfully in

arresting Plaintiff under the facts and circumstances of this case,[13] the Court finds that the City of Beggs is entitled to summary judgment on Plaintiff's claims for assault and battery.

IT IS THEREFORE ORDERED ADJDUGED AND DECREED that the Motion for Summary Judgment filed by Defendants the City of Beggs, Officer Arron Hacker, Officer James Zeigler (Dkt. #79) is hereby GRANTED and, as a result, all of Plaintiff's claims pending against said Defendants are hereby DISMISSED as a matter of law.

IT IS SO ORDERED this 20th day of March, 2015.

James H. Payne
United States District Judge
Eastern District of Oklahoma

---

[13]As noted above, Officers Hacker and Zeigler were police officers with the Beggs Police Department at the time of the arrest, and were performing their legal duties as police officers in serving a bench warrant. *See* 63 O.S. § 2-501(2). Further, other than generalized assertions regarding his brief arrest and detention, Plaintiff has not provided any substantial evidence establishing his apprehension of harmful offensive contact, that the officers intended to cause harmful or offensive contact, or that the officers made physical contact with him, nor does Plaintiff distinguish between the two officers or attribute any actions to the officers individually. Plaintiff conceded that the officers did not use force inappropriately, and the only problem he had was Hacker's alleged "attitude." Summary judgment is appropriate on these claims. *See, e.g., Berglund v. Pottawatomie County Bd of County Com'rs*, 350 Fed.Appx. 265, 275 (10th Cir. 2009) (affirming summary judgment on assault/battery claims in light of generalized nature of allegations).

24